THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
WALTER EUGENE JONES, Appellant.

First Department, February 14, 1991

**APPEARANCES OF COUNSEL**

*Jonathan R. Walsh* of counsel *(Allen H. Saperstein* with him

on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

*Miriam J. Hibel* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

KASSAL, J.

In this prosecution involving several counts of sexual offenses committed by defendant against four children, we exercise our interest of justice jurisdiction to reach various claims implicating constitutional rights, while declining to extend this discretionary review to those counts which are not directly affected by the errors and which are supported by overwhelming evidence.

By indictment No. 2531/86, dated May 28, 1986, defendant was charged with the rape and sodomy of his nine-year-old niece, child A,[1] in March 1986; the rape of his 11-year-old niece, child B, in March 1986; and the sexual abuse of his 13-year-old nephew, child C, on or about a date during the period of March 1, 1986 to March 17, 1986. Under indictment No. 4969/86, dated October 3, 1986, defendant was further charged with the rape and sexual abuse of his 2½-year-old niece, child D, and with coercing child C to have sexual intercourse with child D, on or about a date during the period of March 23, 1985 through June 30, 1985.

Prior to trial, the People moved to consolidate the two indictments on grounds, *inter alia,* that the offenses were "defined by the same or similar statutory provisions and consequently are the same or similar in law" (CPL 200.20 [2] [c]), and that the public interest in avoiding duplicative, lengthy and expensive trials outweighed any unfair disadvantage to defendant. *(See, People v Lane,* 56 NY2d 1, 8.) Among the factors cited in the motion to consolidate was the need for child C to testify with respect to charges on each of the indictments. *(See,* CPL 200.20 [2] [b].) The motion court granted the People's application, and a trial on the consolidated indictment was conducted from November 24, 1987 until December 10, 1987, when the jury rendered its verdict finding defendant guilty of the rape and sodomy of child A,

---

1. The names of the four child victims have been substituted by the letters A-D through this writing.

the rape and sexual abuse of child D, and the coercion of child C. Defendant was acquitted of the sexual abuse of child C.[2]

As relevant to this appeal, the People's case consisted of the following evidence: child A, 11 years old at the time of trial, testified that in March 1986, she lived at 2084 Homer Avenue in the Bronx, with various relatives, including defendant, who was known to the family as "Gene". While asleep one night in March 1986, child A awoke to find that defendant had tied her hands and feet to the bed and was undressing her. He forced his penis into her mouth until she vomited, and then placed his penis into her vagina. Frightened of defendant, child A told no one about the sexual attack. Child A further testified that on nights when her 2½-year-old cousin, child D, stayed over, she could hear the small child crying from defendant's room in the middle of the night.

Child C, 15 years old at the time of the trial, testified that during the period between March 30 and June 30, 1985, he saw defendant get on top of child D, put his penis into her vagina, and "wiggle" around. When questioned by the Trial Judge, child C stated that he had witnessed his uncle do this to child D a "few times" on different days. During the period in question defendant forced child C on one occasion to place his finger into child D's vagina and on another to put his penis into her vagina. Child C further testified that he, too, was sexually abused by defendant, stating that his uncle had touched his penis on several occasions and had once "put his private part in". At these times, defendant would strike child C in the face until he overcame the youngster's resistance.

The People's case also included the testimony of child D's mother, Shirley T., who stated that between March and June 1985, child D regularly visited her father, Myron J., at the Homer Avenue address, from Sunday morning to Monday night, and at times on weekdays. During this period, Shirley T. began to observe disturbing changes in her daughter's behavior. The child, who was toilet trained, had begun to wet her pants and the bed at night. She also engaged in other forms of regressive behavior, such as whining and speaking especially babyishly, had begun to play with her dog's genitals, and was having nightmares during which she would call

---

2. The testimony of child B was stricken from the record, and the rape charges pertaining to her dismissed when, upon taking the stand, she turned her head to the wall and cried, and was unable to testify beyond answering "Yes" to questions of whether her uncle did "something" and "touched" her in March 1986.

out such things as "Uncle Gene, stop". Concerned about this behavior, Shirley T. took child D to a clinic for a physical examination and was referred from there to the Family Court which, in turn, referred her to Leah Harrison, a pediatric nurse practitioner and expert in the field of child sex abuse.

Harrison testified that she had examined child D at the Montefiore Medical Center and found evidence of hymenal scarring indicative of penetration by finger, penis or other object. Also testifying on behalf of the People was Dr. Ann Meltzer, whose expert opinion was that the behavioral symptoms exhibited by child D were consistent with the child's having been sexually abused. Medical records for child D, as well as for child A and child C, were introduced as part of the People's case.

Testifying on behalf of defendant was Pamela J., his sister-in-law and child D's stepmother. Pamela J., who lived at the Homer Avenue house with child D's father, was not there for five days after the birth of her baby on March 11, 1986. She testified, in pertinent part, that it was impossible for sounds of crying to be carried through the vents from defendant's basement apartment to child A's top floor bedroom, and that child D slept in the room that she and Myron J. occupied.

Defendant, who had never been arrested before, took the stand and denied having committed any of the crimes charged, stating that the children were lying. He acknowledged that he was unemployed during the spring of 1985 and after March 17 in 1986 and, although living at the Homer Avenue house with his girlfriend at the time of trial, defendant testified that he lived at his girlfriend's house for periods beginning in November 1985 and including March 1986.

The defense also offered, through the testimony of Herman White, an administrator at the Soundview Health Center, a report dated May 5, 1986, of a Doctor O'Donnell, who discerned "no vaginal trauma or objective evidence of physical or sexual abuse" in an examination of child D. Because of her regressive behavior, age-inappropriate discussion of sexual matters and genitalia, and complaints of pain in the vagina after a visit to her father's house, Dr. O'Donnell nevertheless concluded that there was a strong suggestion that child D had been sexually abused.

On appeal, defendant acknowledges that "the fact that Child D had been sexually abused was uncontrovertible", but urges that the People failed to prove the crimes involving her

were committed by defendant. This claim is largely predicated on the argument that the testimony of child C, who gave an eyewitness account of the sexual offenses committed by defendant against child D, was inherently unreliable. Defendant also challenges the ability of child A to hear child D's cries from his basement apartment, as well as the testimony that Shirley T. observed changes in her daughter's behavior during the period March through June 1985.

■ It is well settled that matters of credibility are reserved for the triers of fact, who have had an opportunity to observe the demeanor of the witnesses and are therefore in the best position to weigh their testimony. *(People v Malizia,* 62 NY2d 755, 757; *People v Rivera,* 121 AD2d 166, 171, 173.) Here, defendant's compilation of apparent discrepancies and inconsistencies, such as child C's testifying at one point that he could not remember how many times defendant had raped child D and at another point stating that it was three times, comprises matters for the jury to resolve. *(People v Matthews,* 159 AD2d 410.) Further, our examination of the record reveals that, except for the charge of sexual abuse, discussed *infra,* there are valid lines of reasoning and permissible inferences which could have led a rational person to the verdicts reached on the various counts of the consolidated indictment. *(People v Bleakley,* 69 NY2d 490, 495.) In this regard, we note that eyewitness child C's testimony was supported in significant respects by the testimony of child A and Shirley T., as well as by that of the experts.

For these reasons, we hold that the evidence presented, viewed in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620, 621) satisfied the proof and burden requirements for the crimes charged. *(People v Bleakley, supra.)*

■ However, it is this court's further conclusion that child C's trial testimony regarding defendant's rape of child D effectively rendered count 1 of indictment No. 4969/86 duplicitous.[3] Under CPL 200.30 (1) "[e]ach count of an indictment may charge one offense only". Where, despite a validly drafted indictment, the trial testimony provides evidence of repeated acts that cannot be individually related to specific counts in the indictment, the prohibition against duplicitousness has

---

**3.** Count 1 charged defendant with the rape of child D as a minor under the age of 11. Count 3 of indictment No. 4969/86, which charged the forcible rape of child D, was not submitted to the jury.

been violated. *(People v Beauchamp,* 143 AD2d 13, 14, *mod on other grounds* 74 NY2d 639; *see, People v Keindl,* 68 NY2d 410, 418.) Here, count 1 of indictment No. 4969/86 was expanded by child C's testimony that defendant had sexual intercourse with child D at least three times, on different days. Because this trial error which was not preserved for appellate review as a matter of law implicates such constitutional rights as proper notice and the protection against double jeopardy *(People v Keindl, supra)* we exercise our interest of justice jurisdiction to address it. The improper testimony regarding defendant's rape of child D did not affect the crimes involving child A, however, and we therefore do not disturb the judgment—which the record establishes was supported by overwhelming evidence—with respect to indictment No. 2531/86. *(See, People v Beauchamp, supra,* 143 AD2d, at 16.)

■ We also consider, in the interest of justice, defendant's unpreserved claim that testimony consisting of child D crying, "Uncle Gene, stop" during nightmares should have been excluded as inadmissible hearsay. *(See,* Richardson, Evidence § 200 *et seq.* [Prince 10th ed]; *People v Caviness,* 38 NY2d 227.) The People urge that this highly prejudicial testimony by Shirley T. was "not offered for the truth", but "only to establish the content of [child D's] screams during her sleep". We reject this reasoning in light of the utter irrelevance of such evidence if not offered for the truth of its content, i.e., that defendant was sexually abusing child D. Moreover, the fact that the statement was made in child D's sleep, and that it was "ambiguous in content and did not unequivocally relate to the subject crime", present serious challenges to its reliability. *(People v Knatz,* 76 AD2d 889; *People v Smith,* 104 AD2d 160, 163-164.) For these reasons, the content of child D's nocturnal cries was inadmissible hearsay and should have been excluded.

■ Finally, we conclude that defendant's conviction on count 2 of indictment No. 4969/86, which charges the sexual abuse of child D, was based on insufficient evidence. This claim, which implicates the People's burden of proof, cannot be waived. *(People v Velasquez,* 151 AD2d 159, 165.) Count 2 of indictment No. 4969/86 charged that defendant had sexually abused child D by "placing his finger to her vagina". At trial, the sole evidence with respect to any such act was child C's testimony that he had placed his own finger into the younger child's vagina, at defendant's command. Although the crime of

sexual abuse may encompass the causing of a third party to touch the victim *(see, People v Ditta,* 52 NY2d 657) the indictment and the jury instructions in this matter were not based upon such a theory, but, rather, upon the allegation that defendant had personally committed the act. The absence of testimony to support that allegation rendered the proof insufficient to sustain the conviction on count 2 of indictment No. 4969/86 *(see, People v Grega,* 72 NY2d 489, 495-496) and it must accordingly be reversed and the count dismissed. *(People v Carrasquillo,* 136 AD2d 297.)

Defendant's remaining contentions of error have not been preserved for appellate review as a matter of law *(see,* CPL 470.05 [2]) and we decline to reach them in the interest of justice.

Accordingly, the judgment, Supreme Court, Bronx County (Ivan Warner, J.), rendered January 7, 1988, convicting defendant, after a jury trial, of rape in the first degree (Penal Law § 130.35 [3] [three counts]), sodomy in the first degree (Penal Law § 130.50 [1]), sexual abuse in the first degree (Penal Law § 130.65 [3]) and coercion in the first degree (Penal Law § 135.65 [2]), and sentencing him to concurrent indeterminate terms of imprisonment of from 7 to 21 years on the rape and sodomy counts, and 2⅓ to 7 years on the remaining counts, should be modified, on the law, the facts, and as a matter of discretion in the interest of justice, to reverse the convictions and vacate the sentences on counts 1 and 2 of indictment No. 4969/86, and dismiss the indictment as to said counts, with leave to the People to resubmit count 1 to another Grand Jury, and otherwise affirmed.

ROSENBERGER, ASCH, WALLACH and SMITH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered January 7, 1988, modified, on the law, the facts, and as a matter of discretion in the interest of justice, to reverse the convictions and vacate the sentences on counts 1 and 2 of indictment No. 4969/86, and dismiss the indictment as to said counts, with leave to the People to resubmit count 1 to another Grand Jury, and otherwise affirmed.