829 P.2d 861

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Asa ZIMMERMAN, Defendant–Appellant.**

No. 18356.

Supreme Court of Idaho,
Coeur d'Alene, October 1992 Term.

April 2, 1992.

Rapaich, Knutson & Chapman, Lewiston, for defendant-appellant. Scott MacDonald Chapman argued.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent. Myrna A.I. Stahman argued.

JOHNSON, Justice.

This is a criminal case. Zimmerman appeals his conviction for lewd and lascivious conduct with a minor under the age of sixteen in violation of I.C. § 18–1508. Zimmerman alleges: (1) that testimony of various witnesses concerning out-of-court statements of the alleged victim of the lewd and lascivious conduct violated his constitutional right to confront witnesses; (2) that the trial court erred in allowing evidence of uncharged conduct; (3) that the trial court erred by limiting the testimony of Zimmerman's expert witness; (4) that the evidence does not support the verdict of guilt; and, (5) that the cumulative error doctrine requires reversal. We reverse and remand for a new trial on the basis of the trial court's admission of some of the out-of-court statements of the victim.

## I.

### OUT–OF–COURT STATEMENTS OF THE ALLEGED VICTIM.

Zimmerman alleges as error the admission of various out-of-court statements made by the victim. The victim was Zimmerman's daughter who was five years old at the time of the alleged lewd and lascivious conduct. Zimmerman and the victim's mother were divorced, the victim's mother had primary custody of the child. Zimmerman received weekend visits by the victim.

At the beginning of the trial and outside the presence of the jury, the court examined the victim to determine whether she was competent to testify. The victim answered some questions but refused to answer questions posed by Zimmerman's attorney. The victim kept asking for her mother and would spin around in the swivel chair in which she was sitting. Based upon her reaction to the questioning, the trial court found the victim to be unable to testify in a courtroom setting, and treated her as an unavailable witness for the purposes of I.C. § 19–3024 and I.R.E. 803(24). We note that Zimmerman has not challenged this finding by the trial court. In any event, whether the victim was unavailable is not significant in light of our treatment below of I.C. § 19–3024 and in light of *White v. Illinois*, — U.S. —, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (confrontation clause does not require that declarant be at trial or unavailable for hearsay statements to be admissible).

We can separate the out-of-court statements into three distinct categories. The first category consists of the victim's statements that her daddy "picked" at her and "scratched" her with his fingernail. The second category consists of the statement "I'm not going to tell my dad's secret," overheard by Latah County Sheriff's Detective "Chip" Whiteley. The third category consists of the statements made by the victim while she was asleep ("sleep-talk"). Because of the different issues involved and different analyses to be applied, we will address each category separately.

### A. The "picked" and "scratched" statements.

The victim and her mother lived with the victim's great-grandmother. The great-grandmother testified that she gave the victim a bath the day after the victim returned from visiting her father on November 27, 1988. She noticed that the victim's vaginal area was red, swollen and irritated, as if it had been rubbed raw. She noticed a "terrific" odor and some discharge. She stated that when she asked the victim what had happened, the victim began to cry and said that her daddy had "picked" at her.

The victim's mother also helped give the victim the bath. She also noted that the victim's vaginal area was swollen and irritated. When she asked the victim what had happened, the victim began to cry and stated that her daddy had "scratched" her with his fingernail.

The trial court admitted these statements of the victim's mother and great-grandmother pursuant to I.R.E. 803(24) and I.C. § 19–3024. The court found that these statements were not admissible under any other hearsay exception; that the conditions surrounding the statements had "circumstantial guarantees of trustworthiness" equivalent to the other twenty-two exceptions listed in I.R.E. 803; that the statements were offered as evidence of a material fact; that the statements were more probative on the point for which they were offered than could be procured by the State through reasonable efforts; that the interests of justice would be served by the admission of the statements because the statements were made in a less threatening situation for a child of tender years; and, that the state had given the defendant adequate notice of the intent to use these statements at trial. Thus, the district court found the five requirements for admission of testimony under I.R.E. 803(24). *See State v. Horsley*, 117 Idaho 920, 792 P.2d 945 (1990); *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988).

In our review of the trial court's ruling, we note that the trial court has

**974**

broad discretion in the admission of evidence at trial and its judgment will be reversed only when there has been an abuse of that discretion. *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988); *State v. Terry*, 98 Idaho 285, 561 P.2d 1318 (1977). In reviewing the decision of the trial court, we look to the totality of the circumstances surrounding the statement and also at those circumstances that make the declarant worthy of belief. *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

The trial court found that the statements were reliable because the victim made the statements the next morning after returning from visiting her father. The trial court concluded that the short length of time between the victim's visit to her father and her bath the next morning indicated that there was not enough time for the victim to fabricate the story. Our review of the totality of the circumstances supports this finding of the trial court. The trial court's finding coupled with the other circumstances surrounding the statement all demonstrate a sufficient showing of trustworthiness. The trial court did not abuse its discretion in admitting this evidence pursuant to I.R.E. 803(24).

■ The trial court also ruled that these statements were admissible under I.C. § 19–3024. This statute allows for the admission of a child's out-of-court statements of sexual or physical abuse or other criminal conduct committed with or upon the child when: (1) the child is under 10 years of age at the time of the conduct; (2) the court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide indicia of reliability; and, (3) the child either: (i) testifies at trial; or, (ii) the child is unavailable as a witness, provided that there is corroborative evidence of the act.

The trial court should not have considered the admission of the out-of-court statements under I.C. § 19–3024. To the extent that this statute attempts to prescribe the admissibility of hearsay evidence and is in conflict with the Idaho Rules of Evidence, it is of no force or effect. I.R.E. 802 ("Hearsay is not admissible except as provided by these rules or other rules promulgated by the Supreme Court of Idaho."); I.R.E. 1102 ("Statutory provisions and rules governing the admissibility of evidence, to the extent they are evidentiary and to the extent that they are in conflict with applicable rules of Idaho Rules of Evidence, are of no force or effect.").

■ The trial court also allowed Dr. Maria J. Krasnec, Ph.D. to testify as to out-of-court statements made by the victim. Dr. Krasnec is a psychologist and counseled with the victim concerning the sexual abuse. Dr. Krasnec testified that the victim stated that her dad "picked" at her or "scratched" her with his fingernail. Dr. Krasnec also testified regarding the victim's statements and reactions Dr. Krasnec observed while treating the victim. The trial court allowed this testimony pursuant to I.C. § 19–3024 and I.R.E. 803(4) and 803(24).

As we discussed above, the trial court should not have considered the admission of this evidence under I.C. § 19–3024.

The trial court should not have admitted this testimony pursuant to I.R.E. 803(4). The exception contained in Rule 803(4) applies only to statements made for the purpose of medical treatment. *Griffith v. State*, 584 So.2d 383 (Miss.1991); *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987). A psychologist does not provide "medical" treatment as contemplated by the rule. *People v. LaLone*, 432 Mich. 103, 437 N.W.2d 611 (1989). A psychologist "cannot be made a conduit for testifying in court as to any and all out of court statements made." *State v. Van Dyken*, 242 Mont. 415, 429–30, 791 P.2d 1350, 1359 (1990); *See also State v. Schreuder*, 726 P.2d 1215 (Utah 1986). Only out-of-court statements necessary for medical diagnosis and treatment are admissible under I.R.E. 803(4). The victim did not make her statements to Dr. Krasnec for the purposes of medical treatment. Therefore, it was error to admit them pursuant to this hearsay exception.

■ Next, we must determine if this testimony is admissible pursuant to I.R.E. 803(24). In a pre-trial Order in Limine, the trial court found:

> According to the Krasnec deposition, [the victim] presented to Dr. Krasnec complaining of nightmares, and stated that she hoped the nightmares would go away and understood that she had to tell the truth in order that Dr. Krasnec could help the nightmares to go away. Dr. Krasnec testified in her deposition as to the emotional state of [the victim], from time to time, during the eleven sessions during which she treated the child. The content of the child's statements and the circumstances under which [the victim's] hearsay statements were made (and, in particular, the fact that Dr. Krasnec testified that the child understood she needed to tell the truth in order to help the nightmares to "go away") provide sufficient indicia of reliability of such hearsay statements and the Court expressly so finds.

The trial court then concluded that such hearsay statements were admissible if either the victim testified at trial or if the victim was "unable to be present or to testify because of death or *then existing* physical or mental illness or infirmity."

The trial court also ruled that the testimony was admissible pursuant to I.R.E. 803(24), because: (1) the statements had sufficient circumstantial guarantees of trustworthiness equivalent to those set out in the other exceptions of I.R.E. 803, (2) the statements were offered as evidence of a material fact, *i.e.*, whether the victim was in fact sexually abused, and (3) the interests of justice would be served because the statements were made in a situation less threatening than open court might be for a very young child. The trial court did not abuse its discretion by admitting this testimony.

B. The "I'm not going to tell my dad's secret" statement.

■ Officer Whiteley testified that he went to visit the victim at home on December 2, 1988. He stated that the victim greeted him at the door, after which she immediately ran up the stairs and yelled, "No. I'm not going to tell my dad's secret. You tell him." The trial court admitted this statement as an excited utterance pursuant to I.R.E. 803(2), which states:

> Excited utterance. A statement made relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition.

■ A trial court may admit a statement as an excited utterance according to its sound discretion. *State v. Bingham*, 116 Idaho 415, 776 P.2d 424 (1989). We recognize that the excited utterance exception has broader application in sex crime cases than in other situations because the distress of the event can remain bottled up until the victim has the opportunity to talk about the incident. *State v. Parker*, 112 Idaho 1, 730 P.2d 921 (1986).

*Parker* dealt with the rape of a fourteen-year-old girl. After being raped, the victim escaped, went to a neighboring house and called her parents. Her parents then called a cousin who was a state fish and game officer. When her parents arrived, the victim remained silent and waited for the cousin to arrive. When the cousin arrived, the victim related the events concerning the rape. This statement occurred not more than three hours after the rape. The Court held that a delay of a few hours after an alleged sex crime did not necessarily prevent the statement from being an excited utterance. 112 Idaho at 4, 730 P.2d at 924.

*Bingham* dealt with the rape of a twelve-year-old girl. Within two hours after the event, the victim related the incident to a police officer and her mother. This Court held that this delay did not prevent the statements from being admitted as excited utterances. 116 Idaho at 421, 776 P.2d at 430.

In the present case, the "event or condition," the alleged sexual abuse, occurred during the period of November 15–27. Officer Whiteley came to visit the victim on December 2. This delay from the time of the "event or condition" to the time of the

declarant's statement is too long. The trial court should not have admitted this statement as an excited utterance.

C. The "sleep-talk" statements.

■ The victim's great-grandmother testified that the victim screamed, "Don't daddy, don't," in her sleep the night after she returned from visiting her father. The victim's mother also testified that the victim screamed, "Don't daddy," during her sleep. Two other witnesses testified that they had heard the victim scream, "Don't daddy, don't," and, "No, daddy no," during her sleep. Zimmerman objected to the admission of these statements on hearsay grounds.

The trial court admitted these out-of-court statements pursuant to I.R.E. 803(24) and I.C. § 19–3024. As we discussed above, the trial court should not have admitted these statements under I.C. § 19–3024.

The trial court found that the statements were trustworthy because they were "spontaneous," indicating that the victim could not have fabricated the statements. The trial court should not have admitted these out-of-court statements.

Courts have long held that "sleep talk" is inadmissible. *Gough v. General Box Co.,* 302 S.W.2d 884 (Mo.1957); *People v. Colon,* 52 P.R.R. 399 (1937); *Martinez v. People,* 55 Colo. 51, 132 P. 64 (1913); *Plummer v. Ricker,* 71 Vt. 114, 41 A. 1045 (1898); *Reavis v. State,* 6 Wyo. 240, 44 P. 62 (1896); *People v. Robinson,* 19 Cal. 40 (1861). While courts differ in the technical reasoning for holding that sleep-talk is inadmissible, the overriding belief is that:

> The operation of the human mind is an enigma, and its expressions in the unconsciousness of sleep are frequently vagaries and fictions, but sometimes born of reality.

*Chadwick v. United States,* 141 F. 225, 239 (6th Cir.1905), quoting *State v. Morgan,* 35 W.Va. 260, 266, 13 S.E. 385, 387 (1891). Our understanding of dreams has advanced little since these early cases.

> Our knowledge about dreaming indicates that, while dreams are to some degree connected to waking-hour desires and anxieties, there is no indication that dream sequences accurately mirror actual events. Therefore, sleep talk contains no probative value regarding actual events or the identities of actual participants. Since sleep talk makes the existence of a fact neither more probable or less probable, it is [ir]relevant [It appears that this is a typographical error in the opinion. The context appears to indicate that this word should be "irrelevant."], as defined by [Evidence Rule] 401.
> Assuming arguendo that such evidence were relevant at all, its inherent unreliability would lead to its exclusion because its probative value is more than substantially outweighed by the dangers of prejudice.

*State v. Posten,* 302 N.W.2d 638, 643 (Minn.1981) (Wahl, J., concurring specially). Indeed, it is the "utter irrelevance" of such evidence that leads to its inadmissibility. *People v. Jones,* 165 A.D.2d 103, 109, 566 N.Y.S.2d 590, 593 (1st Dept.1991) In addition to being utterly irrelevant, the circumstances surrounding sleep talk detract from its reliability. *Godfrey v. State,* 258 Ga. 28, 365 S.E.2d 93 (1988); *People v. Smith,* 104 A.D.2d 160, 481 N.Y.S.2d 879 (2d Dept.1984); *People v. Knatz,* 76 A.D.2d 889, 428 N.Y.S.2d 709 (2d Dept.1980). We agree that in addition to being irrelevant, sleep talk is not reliable and is inadmissible as evidence.

D. Effect of the errors.

■ Having concluded that the admission of the "sleep-talk" and the testimony of Officer Whiteley was error, we must now determine whether these errors require reversal or whether they were harmless. I.C.R. 52 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

To hold that these errors were harmless, we "must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that [the] evidence complained of contributed to the conviction." *State v. Sharp,* 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980).

Because the child was unable to testify in this case, the state built its case on circumstantial evidence. This circumstantial evidence included, among other evidence, the testimony of Officer Whiteley and the "sleep-talk" statements, which we have concluded the trial court should not have admitted.

In his closing argument, the prosecutor told the jury:

[Officer] Whiteley came to speak to [the victim]. What did she do? She ran hysterically up to the top of the stairs and screamed down, "I'm not going to tell my daddy's secret." Ladies and gentlemen, as best as we can, that secret has been told to you.

The "sleep-talk" statements were prominent in the circumstantial case presented by the state. In his closing argument, the prosecutor told the jury that for years the victim had been "trying to tell us that she's been sexually abused by John Zimmerman. Dr. Krasnec also indicated that she's been telling us that through her dreams, through the intensity of her dreams, through the crying out in her dreams."

The prosecutor concluded his closing argument by imploring the jury:

You would have to believe some remarkable things about [the victim] to believe that [the victim] somehow was controlled by [her mother]. You would have to believe not only that she would consistently tell the story about her father and in the same language each time, "He picked at me with his finger," pointing to an injured area. You would also have to believe that she didn't care enough about him that she'd continue to tell that story. You'd also have to believe that she is sophisticated enough that she can fake the emotional reactions; that she can fake it in 11 sessions with Dr. Krasnec; that she can fake a nightmare. And not just one nightmare, but that she can fake several nightmares. That's the sophistication that you have to attribute to [the victim]. That she's able to lie in her bed in a cold sweat and say, "Daddy, don't; Daddy, stop." And do that when [the victim's

mother is] nowhere around and do that when a baby-sitter is there. That's why I say, ladies and gentlemen, that [the victim has] been crying out. She's been crying out for us to hear. And I plead with you to hear. And in hearing, I ask you to find the Defendant guilty of the crime of lewd conduct.

This demonstrates how powerful the "sleep-talk" statements were in the case presented by the state. The prosecutor wove these statements intricately into the state's case.

We are not convinced beyond a reasonable doubt that there was no reasonable possibility that the "sleep-talk" and Officer Whiteley's hearsay testimony regarding the victim's statement contributed to the conviction. Therefore, we must reverse the conviction.

## II.

### EVIDENCE OF UNCHARGED CONDUCT.

The defendant alleges that the trial judge improperly admitted evidence of prior uncharged conduct. The evidence of the prior uncharged conduct was elicited through the testimony of the victim's great-grandmother, the victim's mother and through another witness. All three witnesses testified that on previous occasions, when the victim had just returned from visiting her father, the victim suffered from the same irritated vaginal condition that formed the basis of the present allegations. Zimmerman argues that the trial court failed to make the requisite finding that the probative value of this evidence outweighed the danger of unfair prejudice as required by I.R.E. 403.

Evidence of prior crimes, wrongs, or acts is admissible for the purposes of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." I.R.E. 404(b); *see also State v. Moore*, 120 Idaho 743, 819 P.2d 1143 (1991); *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1984). The test for admitting evidence of prior conduct is twofold. First the trial court must determine

that the evidence is relevant. I.R.E. 402; *State v. Moore*, 120 Idaho at 745, 819 P.2d at 1145. After finding the evidence relevant, the trial court must weigh the probative value of the evidence against the danger of unfair prejudice. I.R.E. 403; *State v. Moore*, 120 Idaho at 745, 819 P.2d at 1145. The balancing process is then within the sound discretion of the trial court. *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983).

The trial court found that the evidence was relevant for the purposes enumerated in I.R.E. 404(b). This finding was appropriate. Evidence of the prior conduct was very relevant to the proceedings. This evidence tended to prove that the irritated vaginal condition was not the product of a single isolated accident. Zimmerman claimed that bubble bath caused the victim's problem with her irritated vaginal area. The evidence of prior conduct showed that the victim had similar problems even when she had not had a bubble bath. This evidence strongly corroborates the victim's allegations, helps to establish the identity of the perpetrator, and is relevant to the parties' credibility. *State v. Moore*, 120 Idaho at 745–46, 819 P.2d at 1145–46. The trial court correctly ruled that this evidence was relevant.

■■■■ The next step of the analysis requires the trial court to balance the probative value against the danger of unfair prejudice. While Zimmerman is correct that the trial court did not make a specific finding as to this element, a review of the record shows that the trial court performed this balancing test in ruling upon the evidence. Before admitting any testimony regarding prior incidents involving the victim's irritated vaginal area, the trial court required that the incidents must have occurred within a reasonably short time after the victim had visited Zimmerman. The trial court then gave the jury an appropriate limiting instruction. Thus, the trial court performed a proper balancing test, and the trial court did not abuse its discretion in admitting this evidence.

## III.

## LIMITING THE TESTIMONY OF ZIMMERMAN'S EXPERT WITNESS.

■■■■ Zimmerman argues that the trial court limited the testimony of Zimmerman's expert witness, Stirling Campbell. Zimmerman tried to elicit testimony from Campbell that it was more likely that the victim was not abused than that she was abused. Whether a witness is sufficiently qualified to render an expert opinion is within the discretion of the trial court. *Sidwell v. William Prym, Inc.* 112 Idaho 76, 730 P.2d 996 (1986).

Campbell worked for the Idaho Department of Health and Welfare and is a licensed social worker. Campbell performed a home-study of both of the victim's parents concerning a previous child protective action concerning the victim. Campbell had contact with the victim and the parents only during the period of February to July of 1988.

The trial court's concerns about Campbell's testimony were two-fold. First, Campbell had no contact with the victim or her parents during the time period in question—November 15–27, 1988. He based his testimony on a totally different time period—February to July 1988. This raised a question regarding the relevancy of the testimony.

Second, despite Zimmerman's argument, it is evident that the trial court limited the testimony because Zimmerman laid an insufficient foundation regarding Campbell's qualifications in child sexual abuse matters. There was no evidence in the record that Campbell had training or experience in the investigation of child sexual abuse allegations. Nor was it clear whether Campbell's job with the Department of Health and Welfare required him to investigate child sexual abuse cases. Based upon these insufficiencies in the record, the trial court properly excluded the testimony.

## IV.

## CONCLUSION.

We reverse the conviction and remand for a new trial.

BISTLINE, J., concurs.

BOYLE, J., fully concurred prior to his resignation March 31, 1992.

BAKES, Chief Justice, specially concurring:

I concur in Parts I(A) and I(C), Part II, and Part III of the Court's opinion. As to Part I(B), the hearsay statement concerning the child's statement that, "No, I'm not going to tell my Dad's secret. You tell him," ordinarily I would agree that such a statement made two weeks after an event would not constitute an excited utterance for purposes of I.R.E. 803(2). However, I don't believe that the "startling event or condition" necessarily has to be the criminal event, in this case the sexual abuse of the child. For example, if a person is sexually abused or assaulted by a person, and inadvertently is confronted by the assailant two weeks later and makes a spontaneous and excited utterance at that confrontation, as the result of "the stress or excitement caused by the [original] event or condition," it could constitute an excited utterance under I.R.E. 802(2). In this case the child, on being confronted by a police officer, made the statement that, "No. I'm not going to tell my Dad's secret. You tell him." Whether or not the unanticipated appearance of a police officer to a child victim is a sufficiently "startling event or condition" under I.R.E. 803(2) to constitute an excited utterance, made while the declarant was under the stress or excitement caused by the original event or condition, is a factual determination for the trial court. The question of whether the unanticipated appearance of the police officer was a sufficiently "startling event" and whether or not the child was still under the "stress" caused by the original sexual molestation was a question for the trial court. It is a very close question in this case whether or not these circumstances constitute an unreasonable extension of the excited utterance exception contained in I.R.E. 803(2). My inclination is to affirm the trial court on this issue.

However, I concur with the majority that the "sleep-talk" statements were clear error. There is just no way of knowing whether the statements, "Don't, Daddy, don't," or "No, Daddy, no," were motivated by sexual molestation, the threat of a spanking, or a subconscious response to the father's insistence that he is going to take the child back to its mother. I agree with the Court that this error is not harmless.

McDEVITT, Justice, concurring and dissenting:

The Court succinctly and with elan sets forth the evidentiary issues raised. The Court wisely and correctly rules on those evidentiary issues. I concur in Parts II and III of the Court's opinion.

I cannot, however, concur in the Court's conclusion in Part I that there was a "reasonable possibility" that the evidence introduced in error could have contributed to the conviction in this case.