# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51485

<table>
<tr><td>

STATE OF IDAHO,

     **Plaintiff-Respondent,**

v.

AARON E. HILTS, II,

     **Defendant-Appellant.**

</td>
<td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td>
<td>

**Filed:  June 15, 2026**

**Melanie Gagnepain, Clerk**

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

</td></tr>
</table>

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Javier Gabiola, District Judge.

Judgment of conviction for stalking, <u>vacated</u> and <u>case</u> <u>remanded</u> <u>for</u> <u>a</u> <u>new</u> <u>trial</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Chief Judge

Aaron E. Hilts, II appeals from his judgment of conviction for stalking.  For the reasons set forth below, we vacate Hilts's judgment of conviction and remand for a new trial.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

From November 2020 to February 2021, Hilts was in a romantic relationship with the victim.  In June 2021, following an incident unrelated to the matters in this case, the victim obtained a civil protection order against Hilts.  During the following months, the victim reported to law enforcement a series of concerning contacts she had received from Hilts, including telephone calls, text messages, emails, and packages sent to her residence.  The State subsequently charged Hilts with first degree stalking, alleging the actions constituting stalking were conducted in violation of the civil protection order.

1

Hilts moved to suppress any evidence obtained from his cell phone, which law enforcement had in its possession pursuant to a search warrant. Hilts argued that the warrant to search his cell phone had expired before the first detective involved in the case was able to successfully access the cell phone with new software. Hilts also objected to the first detective testifying because the State had failed to disclose him as an expert witness. The district court excluded the first detective from testifying, and Hilts agreed this ruling resolved his motion to suppress because this prevented the State from utilizing, as trial evidence, any of the data the first detective extracted from Hilts's cell phone.

A bifurcated trial was held, with the jury first considering the stalking charge and then, based on the outcome of the first part, considering whether Hilts had violated the civil protection order. At trial, the victim testified about the course of conduct underlying the stalking charge, including the packages she received at her residence. The victim testified that one package came without an identified purchaser listed, was similar to a gift Hilts had given her while they were dating, and included a credit card number listed on the package's invoice that did not belong to her. On cross-examination, Hilts asked the victim if she knew his credit card number, and the victim responded that she did not. The district court found that Hilts's question placed his credit card number at issue and thereby opened the door for the State to introduce limited evidence from his cell phone data, which verified his credit card number was the one listed on the package's invoice.

The State called a second detective to testify, who described indicators commonly associated with stalking behavior. Based on her training and experience as an investigator, the second detective identified social-media contact patterns, escalation dynamics, and threatening behavior that indicated stalking. The State did not disclose the second detective as an expert witness prior to trial, and her testimony was admitted as lay opinion testimony. The State also called the victim's ex-boyfriend as a witness to testify about alleged communication that occurred between him and Hilts.

At the conclusion of the first part of the trial, the jury found Hilts guilty of stalking (Idaho Code § 18-7905). The district court then proceeded to part two of the trial--whether Hilts violated the civil protection order, which enhanced the stalking charge to a felony. The State sought to admit a copy of the civil protection order. Hilts objected, arguing that the civil protection order

2

was inadmissible for failing to satisfy the requirements governing proof of the contents of official records. The district court overruled Hilts's objection. Thereafter, the victim testified regarding the civil protection order and the State admitted a copy of the order into evidence. The jury found Hilts violated the civil protection order. Hilts appeals.

## II.

## STANDARD OF REVIEW

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

### A. Trial

Hilts argues the district court abused its discretion by excluding and admitting certain evidence at trial. Specifically, Hilts contends the district court abused its discretion by: (1) admitting previously excluded evidence extracted from his cell phone, which confirmed his credit card number; (2) erroneously admitting the second detective's undisclosed expert opinion testimony; (3) excluding extrinsic evidence for impeachment purposes; and (4) admitting an uncertified copy of the civil protection order into evidence. Hilts further argues that these evidentiary errors in the aggregate deprived him of a fair trial. The State responds that Hilts has failed to demonstrate that the district court abused its discretion by admitting evidence of the credit card number, by allowing the second detective to testify as a lay witness, and by admitting a copy of the civil protection order. The State concedes the district court erred by excluding extrinsic evidence for impeachment purposes but asserts that the error was harmless. Finally, the State asserts that Hilts has failed to demonstrate that any error violated his due process right to a fair trial.

#### 1. Sufficiency of the evidence

Hilts argues the district court abused its discretion by admitting and excluding certain evidence at trial. The decision whether to admit evidence at trial is generally within the province

of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992).

### a. credit card number

Prior to trial, the district court excluded evidence obtained from Hilts's cell phone, including his credit card number, when it determined the detective who had extracted the cell phone information had not been timely disclosed as an expert. At trial, Hilts cross-examined the victim and asked her if she knew Hilts's credit card number. The victim responded that she did not. The State then introduced the previously excluded evidence of Hilts's credit card number obtained from his cell phone.[1] The district court found that Hilts had "asked about the credit card, so that's--the door's been opened." On appeal, Hilts argues the district court abused its discretion by finding that he had "opened the door" to the otherwise inadmissible evidence by asking the victim if she knew Hilts's credit card number during cross-examination.

A party "open[s] the door" when its questioning or evidence invites a line of inquiry that would otherwise be inadmissible but is relevant, thereby permitting the opposing party to explore that subject to clarify or rebut the impression created. *Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr., Ltd.*, 164 Idaho 129, 134, 426 P.3d 480, 485 (2018) (holding that the hospital opened the door to previously excluded evidence by introducing exhibits discussing a medical condition in cross-examination, which then allowed the appellant to ask about the same medical condition during redirect cross-examination). In other words, "a party opens the door when it elicits misleading testimony or makes a factual assertion that the opposing party has a right to correct so that the jury will not be misled." 29 AM. JUR. 2d *Evidence* § 352 (updated 2026).

During direct examination, the victim testified that the credit card number on the package's invoice did not belong to her, and she believed the gift had been sent by Hilts. Then, during cross-examination, the victim testified that she did not know Hilts's credit card number. This

---

[1] On appeal, neither Hilts nor the State challenges the exclusion of the evidence obtained from Hilts's cell phone.

testimony did not elicit any misleading testimony or make a factual assertion that needed correcting. The victim did not testify that the number did or did not belong to Hilts or otherwise make any factual assertion that created a misleading impression for the jury. Any uncertainty regarding the victim's knowledge of the credit card number (as opposed to the actual number of the credit card) could have been clarified by the State on redirect examination, but the State did not clarify. Accordingly, Hilts's cross-examination did not open the door to otherwise excluded evidence of his credit card number. Because Hilts did not open the door, the district court did not act consistently with the applicable legal standards by allowing the State's evidence of Hilts's credit card number.

> **b.** **second detective's testimony**

At trial, the State sought to present testimony from the second detective, who investigated Hilts's conduct--as reported by the victim. Hilts objected to the second detective's testimony about her training and experience involving stalking cases. Hilts argued that the State was laying a foundation for undisclosed expert opinion testimony from the second detective. The State responded that it was not seeking to elicit an expert opinion and that it would not ask the second detective to offer any conclusions about Hilts or his conduct. The State explained that, instead, it would be asking the second detective about her investigation process in stalking cases, as informed by her training. The district court overruled Hilts's objection, concluding that the proposed testimony was not expert opinion testimony.

Drawing the line between lay and expert opinion testimony primarily turns on whether the testimony is: (1) rationally based on the witness's perception under Idaho Rule of Evidence 602; and (2) not based on scientific, technical, or other specialized knowledge within the scope of I.R.E. 702. *State v. Smith*, 170 Idaho 800, 817, 516 P.3d 1071, 1088 (2022); *see* I.R.E. 701. A lay opinion is one reached through the application of everyday reasoning or the consultation of a resource available to the general public, while an expert opinion is one reached through the application of scientific, technical, or specialized knowledge (or tools) not generally known by the general public. *Smith*, 170 Idaho at 818, 516 P.3d at 1089. Idaho Rule of Evidence 702 defines an expert witness as a "witness who is qualified as an expert by knowledge, skill, experience, training, or education." An expert witness "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

5

understand the evidence or to determine a fact in issue." I.R.E. 702. Idaho Criminal Rule 16(b)(7) requires the State to provide a written summary or report of any testimony that it intends to introduce at trial pursuant to I.R.E. 702.

Here, the district court found that the testimony was not subject to the I.C.R. 16(b)(7) disclosure requirements because the State did not present the second detective's opinions. Instead, the district court found the testimony was "limited to identifying and testifying as to what [the second detective] understands the investigative process to be." Although the district court cited *State v. Dacey*, 169 Idaho 102, 491 P.3d 1205 (2021) in concluding that the second detective's testimony was admissible as lay opinion because she described an investigative process without offering a personal conclusion, *Dacey* does not stand for that proposition. Rather, *Dacey* held that testimony framed as an explanation of investigative steps constitutes expert opinion when it relies on specialized knowledge or a professional evaluative process not rooted in everyday reasoning. *See id*. at 111-12, 491 P.3d at 1214-15. The relevant inquiry is not whether the witness stated an explicit conclusion but whether the witness's reasoning process reflected specialized training rather than ordinary experience. *See id*.; *see also Smith*, 170 Idaho at 817-19, 516 P.3d at 1088-90 (explaining that testimony based on professional training reflects specialized reasoning rather than ordinary observation). As clarified in *Smith*, the distinction between lay and expert opinion turns on the reasoning process used: a lay opinion results from reasoning familiar in everyday life, while an expert opinion results from reasoning that can be mastered only by specialists in the field. *Smith*, 170 Idaho at 817-18, 516 P.3d at 1088-89.

Our analysis is further guided by the Idaho Supreme Court's decision in *State v. Frandsen*, ___ Idaho ___, 581 P.3d 319 (2025). In *Frandsen*, the appellant was found guilty of two counts of lewd conduct with a minor. At trial, the jury heard testimony from a forensic interviewer who interviewed one of the victims. More specifically, the witness testified concerning her process for conducting forensic interviews with children. The appellant objected to the testimony, arguing that the witness was testifying as an expert witness despite not being disclosed as one. The trial court disagreed and allowed the witness, "based on her training and experience, to testify as a fact witness regarding the procedures she used in the forensic interview." *Id.* at ___, 581 P.3d at 326. The witness subsequently testified about the interviews she conducted with the victim. On appeal, the appellant argued that the witness testified as an expert because the testimony was based

6

upon specialized knowledge or training.  Because the State failed to properly disclose the witness as an expert, the appellant asserted that the trial court erred in admitting the testimony.  The Court agreed and held that the trial court erred in allowing the witness to testify as an expert witness, "despite her non-disclosure as such."  *Id*. at ___, 581 P.3d at 340.  While the witness "properly testified as a fact witness when she described her job and discussed how she conducts her interviews," the Court held that the witness ventured "into the realm of an expert witness when she testified about what 'the research shows' and the scientific basis for why she asks questions in a certain manner."  *Id*.  According to the Court, "this is precisely the type of 'scientific, technical, or other specialized knowledge' that implicates Idaho Rule of Evidence 702."  *Frandsen*, ___ Idaho at ___, 581 P.3d at 340.  The Court noted that this was "a close call" and that "this issue could have been avoided had the State simply listed [the witness] as an expert witness."  *Id*.

Applying these principles, portions of the second detective's testimony went beyond describing ordinary observations and, instead, relied on criminological and behavioral analysis training not within common knowledge--training akin to the specialized evaluative reasoning and specialized knowledge the Idaho Supreme Court deemed expert in *Dacey* and *Frandsen*.  In the instant case, the second detective's testimony described how social-media contact patterns, escalation dynamics, and threatening behavior typically manifest in stalking cases and the State's questioning also characterized her as being "trained to look for" those markers.  As a result, the district court erred by overruling Hilts's objection to the second detective's testimony and did not act consistently with the applicable legal standards.

### c. text messages

Idaho Rule of Evidence 608(b) prohibits the admission of extrinsic evidence to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  This rule applies only where the prior conduct itself is evidence that the witness lied, committed fraud, or otherwise acted untruthfully; evidence merely contradicting a witness's testimony does not fall within I.R.E. 608(b).  *State v. Hayes*, 166 Idaho 646, 656, 462 P.3d 1110, 1120 (2020).

Hilts argues the district court abused its discretion by excluding screenshots of text messages he claimed were sent from the victim's ex-boyfriend and by characterizing the

7

screenshots as inadmissible extrinsic evidence under I.R.E. 608(b). The State concedes that the district court misapplied I.R.E. 608(b) but maintains the error was harmless.

The victim's ex-boyfriend testified on cross-examination that he did not send text messages to Hilts about wanting to confront him at a restaurant. Hilts testified that the victim's ex-boyfriend texted Hilts to meet at a restaurant. Hilts sought to admit extrinsic evidence of the screenshots of text messages, which the ex-boyfriend had reviewed and denied sending. Because the evidence merely contradicted the ex-boyfriend's testimony, the extrinsic evidence was admissible as impeachment by contradiction under I.R.E. 608(b). Accordingly, the district court erred by excluding the screenshots of text messages.

### d. civil protection order

In part two of the trial, the jury considered whether Hilts violated the civil protection order. At trial, Hilts objected to the admission of a copy of the civil protection order, arguing it did not satisfy the evidentiary requirements governing proof of the contents of official records. The district court overruled the objection and allowed the admission of the copy of the civil protection order into evidence.

A duplicate is admissible to the same extent as the original unless a genuine question is raised about the authenticity or the circumstances make its admission unfair. I.R.E. 1003. Idaho Rule of Evidence 1005 specifically governs proof of the content of an official record and requires that a copy be either certified or testified to as correct by a witness who has compared it with the original. When a copy of an official record is offered, I.R.E. 1005--not I.R.E. 1003--controls admissibility. Idaho Rule of Evidence 1003 is not a substitute for the foundational requirements imposed by I.R.E. 1005 when an official record is at issue.

Here, the evidence was offered to prove the contents of a civil protection order, an official record. During the second part of the trial, the victim testified that she had obtained a civil protection order against Hilts, and the State sought to admit a copy of that order. Hilts objected, arguing the copy was inadmissible under I.R.E. 1005 because it was not certified. After the victim answered "yes" to the question of whether the exhibit was a true and accurate copy of the civil protection order, the district court overruled the objection. The district court also overruled Hilts's additional objections based on relevance and foundation. The district court admitted the

copy of the civil protection order into evidence. Pursuant to I.R.E. 1003, the district court ruled that the admission of a duplicate was permitted.

Unless a rule or statute provides otherwise, an original writing is required in order to prove its contents and render it admissible. I.R.E. 1002. Although I.R.E. 1003 provides that a duplicate of a writing is admissible under certain circumstances, I.R.E. 1005 provides more restrictive requirements regarding the admission of public records. That rule provides that a party may utilize a copy of a public record to prove the record's content if: (1) the record is otherwise admissible; and (2) either the copy is "certified as correct in accordance with [I.R.E.] 902(4)" or "is testified to be correct by a witness who has compared it with the original." I.R.E. 1005.

In order to admit a copy of a public record pursuant to I.R.E. 1005, there must be some evidentiary foundation from which the trial court can conclude that the copy is an accurate reproduction of the original public record other than a witness simply stating that it was a true and accurate copy of the official record. We are not suggesting a witness must perform a side-by-side comparison in court, but there must be more foundation laid than was done in this case. Here, the copy was not certified, and the victim did not testify that she had seen or reviewed the original protection order, much less that she had compared the copy to the original. Likewise, no witness testified that the copy had been compared to the original and found to be accurate. Thus, the requirements of I.R.E. 1005 were not satisfied, and the district court erred in admitting the copy of the civil protection order.

### 2. Harmless error

Hilts argues the district court's evidentiary errors were not harmless because each affected the jury's determination of whether his conduct constituted stalking and whether he violated a valid civil protection order. Specifically, Hilts contends that the improperly admitted evidence regarding his credit card number provided the only evidence that he sent a gift to the victim, the second detective's undisclosed expert testimony improperly guided the jury's interpretation of stalking behavior, the exclusion of impeachment evidence limited his ability to challenge the credibility of the victim's ex-boyfriend, and the improperly admitted civil protection order exhibit supplied the jury with the only documentary evidence establishing the existence and terms of the protection order. The State responds that any evidentiary errors were harmless because substantial independent evidence supported the jury's verdicts, including the victim's testimony, documentary

exhibits, and other testimony corroborating the existence of the civil protection order and Hilts's conduct toward the victim. We address each claimed error in turn.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

First, the district court's error in admitting evidence of Hilts's credit card number was not harmless. Prior to trial, the district court excluded evidence obtained from Hilts's cell phone, including his credit card number, because the detective who extracted the information had not been timely disclosed as an expert. As discussed above, Hilts did not open the door to that otherwise inadmissible evidence. The State rested after the detective's testimony regarding the State's exhibit, which showed Hilts's credit card number. This exhibit and testimony on Hilts's credit card number provided the only evidence that he sent a gift to the victim. The other exhibits depicting alleged gifts sent from Hilts did not include an invoice or receipt linking the gifts to him. Thus, the probative force of this error was significant. We cannot conclude beyond a reasonable doubt that the improperly admitted evidence did not contribute to the jury's verdict.

Second, as to the district court's error of overruling Hilts's objection to the second detective's testimony, that error was harmless. The victim testified extensively about Hilts's

communications and their impact on her, and the jury reviewed exhibits depicting Hilts's voicemails, text messages, and gifts. These materials allowed the jury to directly assess Hilts's conduct and its effect on the victim, even without the second detective's testimony (which was based on her specialized training). Given the strength of the independent evidence, any improper expert opinion testimony did not contribute to the jury's finding that Hilts's conduct constituted stalking.

Third, the district court's error of excluding screenshots of text messages that Hilts claimed were sent from the victim's ex-boyfriend was also harmless. The ex-boyfriend was not a witness to the majority of Hilts's course of conduct described by the victim at trial. It was Hilts's conduct toward the victim and its impact on her that formed the central issue upon which the jury's verdict rested, not the credibility or conduct of the victim's ex-boyfriend (who acknowledged he did not like Hilts). Hilts was permitted to question the ex-boyfriend about the text messages during cross-examination. Hilts was also permitted to testify about the text messages during his own testimony. The probative force of the excluded screenshots was limited and peripheral to the central issues tried to the jury, and Hilts was able to challenge the ex-boyfriend's credibility, even without the physical exhibits. Given the collateral nature of this impeachment and the limited probative value of the screenshots of text messages, their exclusion did not affect the jury's verdict.

Finally, as to the district court's error of admitting a copy of the civil protection order, that error was not harmless. After the district court overruled an objection from Hilts, the victim testified regarding the civil protection order and the State admitted a copy of the order into evidence. Absent the copy of the civil protection order, there was no basis to enhance Hilts's conduct from misdemeanor stalking to felony stalking. Similarly, there was limited testimony regarding the specific terms and scope of the order, which was insufficient to establish the existence of the civil protection order beyond a reasonable doubt. The lack of foundation to authenticate the civil protection order precluded a conviction for felony stalking.

## B.     Cumulative Error

Hilts also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction because, even if the errors were individually harmless, his right to a fair trial was violated by the accumulation of the errors. The State argues that, even if the district court committed multiple errors in the first part of the bifurcated trial, no cumulative impact of these

errors resulted in a violation of Hilts's due process right to a fair trial. Under the doctrine of cumulative error, a series of errors (harmless in and of themselves) may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). A necessary predicate to the application of the doctrine is a finding of more than one error. *Id.* Hilts identifies multiple errors. While some of the individual errors may have been harmless when considered in isolation, we cannot conclude, after weighing the probative force of the errors against the record as a whole, that the errors did not contribute to the jury's verdict. Accordingly, because the cumulative effect of those errors warrants relief, a new trial is required.

## IV.

## CONCLUSION

The district court erred by admitting evidence about Hilts's credit card number, by admitting portions of the second detective's testimony, and by excluding Hilts's proffered screenshots of text messages. The district court also erred by admitting a copy of the civil protection order. Hilts has shown he is entitled to relief based on cumulative error. Accordingly, we vacate Hilts's judgment of conviction for stalking and remand for a new trial.

Judge HUSKEY and Judge Pro Tem MELANSON, **CONCUR**.