# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-11452

United States Court of Appeals
Fifth Circuit

**FILED**
November 5, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

LAROY DAMONT JOHNSON,

> Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before KING, HIGGINSON, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

A jury convicted Laroy Johnson of illegally possessing drugs and guns. On appeal, Johnson raises several evidentiary issues, including whether incriminating jail phone recordings were improperly authenticated, whether two officers wrongly testified about why drug dealers typically use guns to ply their trade, and whether the prosecutor improperly argued that an officer had no reason to lie on the stand. We affirm.

## I.

### A.

On April 26, 2016, Irving County narcotics officers broke down the door of Room G1086 at the Budget Suites Hotel to find Laroy Johnson sitting on a

No. 17-11452

couch amidst a cornucopia of drug-dealing paraphernalia. The officers found 20 grams of heroin in the refrigerator (enough for 100-200 street-level "sells"); a heroin-dusted digital scale, a razor blade, and a baggie of Xanax on the table; six cell phones; $5,000 cash (mostly in twenties); several gift cards in various places; and a loaded Glock handgun under the bedroom mattress. They arrested Johnson and a grand jury later indicted him for one count of possessing heroin with intent to distribute, one count of being a felon in possession of a firearm, and one count of possessing a firearm in furtherance of drug trafficking.

B.

While awaiting trial at the Irving County Jail, Johnson made several phone calls to loved ones that the government later introduced at trial. During those calls, Johnson stated that he had previously planned to take a gun to his grandmother's house and that his child's mother had likely informed the police that he was selling drugs at the hotel. He also talked to a woman who had planned to stop by his hotel room on the day he was arrested and told her that police would not have arrested her because "[e]verything in there is mine."

To authenticate the recordings, the government presented two witnesses—James Ryan, a technician employed by Securus Technologies who maintained the jail's phone equipment, and Detective Tim Hilton, a police officer who identified Johnson on the calls. First, Ryan testified that he personally installed the jail's phone system, monitored it, and repaired it when necessary. Ryan also described the automated recording and storage process. The jail assigns inmates an individual pin number they must enter to make a call. When an inmate picks up the phone and enters his pin, the system automatically records his call and digitally stores the call on a secure data server in Atlanta. Specifically, Ryan explained:

2

No. 17-11452

> [The call] goes through a series of servers that collects the voice, the called party information, and combines that information and then it records it at that data center and then the data center streams it out to the public switch telephone network like AT&T or Southwestern Bell, and then it hits the calling party phone.

Ryan further testified that the system produced accurate recordings because "the voice recording and data stream all with the call information is all recorded at the same time." Second, Detective Hilton searched for Johnson's phone recordings by name and date in the Securus database, burned them to a CD, listened to the calls, and identified Johnson as the speaker. Hilton testified that he could correctly identify Johnson because he had spoken with him in person and because in one of the calls Johnson was identified by name.

At trial, Johnson objected to the admission of the phone recordings, arguing they had not been properly authenticated because the government had not shown the recording equipment was in "good working order and capable of producing an accurate recording" at the precise time the recordings were made. The judge overruled the objection, stating (outside the jury's hearing) that "between [Detective Hilton] and Mr. James Ryan, I think the proper predicate has been established . . . as to authenticity."

C.

Detective Hilton and another law enforcement officer, DEA Special Agent James Henderson, testified at trial that drug dealers routinely use guns as part of their operations. When the prosecutor asked Hilton why drug dealers have firearms, Johnson objected (unsuccessfully) on speculation and relevance grounds. Hilton then answered:

> Well, the main reason is in the criminal world, drug rip offs are big business for them, so drug dealers know people know they have drugs and they know they have cash. On the other hand, customers need to know that the drug dealers are armed so they don't try and steal from them or try and come back and rob them, so it is something that is common. It is very typical.

3

No. 17-11452

Agent Henderson similarly testified:

> In my experience, drug traffickers use firearms primarily for protection, protection of their products[,] their drugs or their money, the revenue. And they also use it for intimidation in my experience, that is why they have the firearm.

Johnson did not object to Henderson's statement.

### D.

Detective Kyle Fleischer testified at trial that during the hotel room search Johnson admitted he had drugs in the fridge and a gun under the mattress. Fleischer stated that Johnson told him something to the effect that, "[H]ey, man, I am not going to waste your time. I am going to show you where the dope is. The dope is in the fridge, and the gun is under the bed." On cross examination, Johnson questioned Fleischer about why that statement was not in the original police report. Fleischer responded that he had not written the report and that a supplemental police report did include the statement. Johnson pointed out that the supplemental report contained only part of the statement: it described Johnson's admission about the heroin but did not mention the gun. Fleischer replied that this was due to a mistake in communication and the length of time between the incident and when he was asked to review the report. Fleischer also testified that police reports are summaries and not word-for-word transcriptions.

Later, during closing argument, Johnson's attorney suggested that Detective Fleischer had lied about Johnson's hotel room admission. Johnson's attorney stated:

> Isn't it interesting that a year-and-a-half later, two weeks before trial, this statement somehow gets reduced to writing and the only thing that is written down is something about drugs. . . . You don't write that down. Isn't that convenient? If you come in later on, that is what he said. Did you write it down. No, I didn't write a report. Well, I just kind of do a summary. Give me a break. If he said he killed five people, they would write it down. It is no different. . . .

4

They want to say I didn't write it down it is just a summary. They know that is what he said. Gee, that is pretty convenient. . . . So I don't think you can give that any weight whatsoever that [Johnson] made that statement . . . .

The prosecutor retorted during his own closing by pointing to Fleischer's lack of motive to lie:

Ladies and gentlemen, [Johnson's] case is a serious uphill battle in this case. When you come in to court and you have evidence both direct and circumstantial that is overwhelming against your client, what do you do? You say law enforcement could have done more and you call into question their credibility. Think about what he is telling you. Officer Fleischer is not the lead agent on this case. You think this is a huge big case that he is willing to put his career on the line. He is suggesting to you when he came in this court and looked you in the eye and took an oath to tell the truth and completely fabricated a statement.

Johnson did not object.

The jury subsequently convicted Johnson on all three counts, and the district court sentenced him to 96 months imprisonment. Johnson timely appealed his conviction.

## II.

On appeal, Johnson contests two of the district court's evidentiary rulings and, further, claims that prosecutorial misconduct requires reversal. Specifically, Johnson contends the court erred in admitting the jail phone recordings, which he claims were not properly authenticated. Johnson also contends the court erred in admitting the officers' testimony about why drug dealers typically carry guns, which Johnson characterizes as prohibited expert *mens rea* testimony. Finally, Johnson contends the prosecutor's closing argument suggesting that Detective Fleischer had no reason to lie constituted impermissible witness bolstering. We examine each argument in turn.

No. 17-11452

A.

Johnson first challenges admission of the jail phone recordings, arguing they were not properly authenticated. We review a district court's evidentiary rulings for abuse of discretion subject to harmless error analysis. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007). "For any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced the defendant's rights." *Id.*

Johnson claims the district court abused its discretion in admitting the jail phone recordings because the government failed to show the recording equipment was in "good working order and capable of producing an accurate recording" at the precise time the recordings were made. He further maintains that this error substantially prejudiced him, and that no harmless error exists. In Johnson's view, the government did not meet its burden to show the recordings were properly authenticated because it did not "produce evidence sufficient to support a finding that the item[s] [are] what the proponent claims [they are]." Fed. R. Evid. 901(a).

Generally, "[t]o establish authenticity [of intercepted telephone recordings], the Government must demonstrate: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices." *United States v. Green*, 324 F.3d 375, 379 (5th Cir. 2003) (citing *United States v. Biggins,* 551 F.2d 64, 66 (5th Cir. 1977)) (the "*Biggins* factors"). This is not a rigid formula, however. "The party seeking to establish authenticity need not meet all the factors set out in *Biggins,* if upon independent examination, the district court is convinced that the recording accurately reproduces the auditory experience." *Id.* (cleaned up). Here, the government produced sufficient evidence to authenticate the recordings and satisfied each *Biggins* factor.

As to factor one (operator competency), because the Securus recording system is an automated process, operator competency is not particularly salient. Nonetheless, Ryan's testimony clearly showed his knowledge about the equipment and recording process. Ryan testified that he personally installed the jail's phone system, monitored it, and repaired it when necessary. He also described the automated recording and storage process in detail.

As to factor two (equipment fidelity), Ryan testified about the trustworthiness of the equipment and that it worked as intended. He testified that Securus regularly "maintain[s] the cameras and recording equipment to make sure they are operating properly," and that he "monitor[ed] and repair[ed] those systems" himself. Moreover, Johnson does not dispute that he made the calls using his pin number and that the calls were recorded and found on Securus's server.

As to factor three (absence of alterations), Johnson does not claim the recordings were materially altered, but, in any event, testimony from both Ryan and Detective Hilton shows they were not. Ryan testified that the system produced accurate recordings because "the voice recording and data stream all with the call information is all recorded at the same time." Therefore, because the process is automated, the very fact that the recordings exist and could be played pointed strongly to their accuracy. Additionally, Hilton verified the recordings' chain of custody from the time he downloaded the calls until he turned them over to the prosecutor.

As to the final factor (identification of sounds or voices), Detective Hilton identified Johnson on the recordings. Hilton testified that he could correctly identify Johnson because he had spoken with him in person and because, on one of the calls, Johnson was identified by name. Other calls contained discussions about relevant aspects of the search—from details about the drugs to Johnson's hotel room number.

No. 17-11452

Even if the government had not satisfied each *Biggins* factor, the calls would still be admissible "if upon independent examination, the district court [wa]s convinced that the recording[s] accurately reproduce[ ] the auditory experience." *Green*, 324 F.3d at 379 (cleaned up and brackets added). The district court was rightly convinced here. When overruling Johnson's objection, the court stated that "between [Detective Hilton] and Mr. James Ryan, I think the proper predicate has been established . . . as to authenticity." Our precedent supports that conclusion. In *Green*, the defendant challenged the admission of intercepted jail calls because the government "did not adequately demonstrate how the recording equipment worked, who worked it, what kind of training the operator had, whether the equipment was reliable, and when the recordings were made." *Id.* at 380. We held the district court did not abuse its discretion in determining the calls were authenticated because,

> [a]fter reviewing the record, we [we]re persuaded that the intercepted telephone recordings accurately reproduce the auditory experience. As one of the case agents overseeing the wiretap operation, [the witness] possessed knowledge of the reliability of the intercepted telephone recordings. Having met [the defendant], [the witness] was also able to identify his voice.

*Id.* (brackets added). Additionally, agents had listened to the calls and "corroborated [the defendant's] conversations with his actions on numerous occasions." *Id.* Detective Hilton similarly identified Johnson here, based on his previous interactions with Johnson and the content of the calls.

In sum, the district court did not abuse its discretion by admitting the recordings.

## B.

Johnson next challenges the admission of Detective Hilton's and Agent Henderson's trial testimony regarding why drug dealers routinely use guns in their crimes. Johnson asserts that the statements were improper expert opinion on whether he had the mental state to commit the crime. *See* Fed. R.

No. 17-11452

Evid. 704(b); *see also*, *e.g.*, *United States v. Gutierrez-Farias*, 294 F.3d 657, 661–63 (5th Cir. 2002) (discussing Rule 704(b)).

Although evidentiary rulings are usually reviewed for abuse of discretion, a defendant must preserve error. *Morgan*, 505 F.3d at 339. Johnson argues he did so by objecting to Detective Hilton's statements. But Johnson did not object on Rule 704(b) grounds. When the prosecutor asked Hilton why drug dealers have firearms, Johnson objected only on the grounds of speculation and relevance. That objection did not preserve the error Johnson now urges because it was not "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). A defendant's objection must be "on the specific grounds he . . . raises" on appeal. *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013). Johnson's was not.[1]

We therefore review for plain error, which requires the four-fold showing that "(1) the district court committed an error, (2) the error is plain, (3) the error affects [appellant's] substantial rights, and (4) failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. del Carpio Frescas*, 932 F.3d 324, 332 (5th Cir. 2019) (citing *United States v. Sanchez-Hernandez*, 931 F.3d 408, 410–11 (5th Cir. 2019)) (brackets added).

"In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Johnson contends that both Hilton's and Henderson's testimony

---

[1] Johnson further argues that his failure to object to Henderson's statement should be excused because the district court had already overruled a similar objection. But, again, this argument fails because the district court did not entertain an objection based on Rule 704(b).

violated that rule because their testimony that drug dealers usually carry guns in order to protect themselves, their drugs, and their revenue goes to the mental state or condition required by 18 U.S.C. § 924(c)(1)(A).

That statute, however, "does not answer the question of the requisite mental state," *United States v. Smith*, 878 F.3d 498, 501 (5th Cir. 2017), *cert. denied*, 139 S. Ct. 787 (2019), and so we have had to tease it out in our cases. In doing so, we have explained that the "'mere presence' of a firearm at a crime scene" is insufficient, meaning that the statutory "*mens rea* is more than strict liability." *Id.* at 501, 502 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414, *as amended on denial of reh'g and reh'g en banc*, 226 F.3d 651 (5th Cir. 2000)). At the opposite extreme, however, the statute does not require evidence of "a defendant's intent regarding the weapon." *Smith*, 878 F.3d at 502. What the statute demands, instead, is evidence "specific to the particular defendant, showing that his or her possession *actually furthered* the [crime]." *Id.* at 501–02 (quoting *Ceballos-Torres*, 218 F.3d at 414). To identify such evidence, *Ceballos-Torres* offered a non-exclusive list of circumstantial factors: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414–15; *see also Smith*, 878 F.3d at 502 (observing that *Ceballos-Torres* "laid out several factors that it deemed helpful, but not exclusive, to distinguish innocent from criminal possession"). In sum, under our precedent—as recently "reaffirm[ed]" by *Smith*—the mental state "requirement" in § 924(c)(1)(A) is "knowing possession with a nexus linking the defendant and firearm to the offense." *Smith*, 878 F.3d at 502.

In light of that standard, Johnson contends that the challenged testimony crosses the Rule 704(b) line prohibiting expert *mens rea* testimony.

He argues that, by stating drug dealers typically keep guns to protect themselves, their drugs, and their revenue, Hilton and Henderson provided testimony that was "functionally equivalent" to an opinion about why Johnson was possessing the gun. *Gutierrez-Farias*, 294 F.3d at 663. On this view, admission of the Hilton/Henderson testimony violated Rule 704(b) because it opined on the mental state necessary to violate § 924(c)(1)(A). *See, e.g.*, *United States v. Palmer*, 456 F.3d 484, 490-92 (5th Cir. 2006) (reversing conviction under § 924(c)(1)(A) because defendant's plea colloquy statements that he possessed the gun only for self-protection rather than drug trafficking "necessarily precluded his conviction").

In response, the government contends that the challenged testimony could not have violated Rule 704(b), pointing to *Smith*'s statement that § 924(c)(1)(A) *mens rea* does not require proof of "a defendant's intent regarding the weapon." *Smith*, 878 F.3d at 502; *see also id.* (observing that "[a]t no point did the [*Ceballos-Torres*] court examine the defendant's intended use for the weapon"). On this view, the Hilton/Henderson testimony simply did not speak to the mental state required by § 924(c)(1)(A) and so did not run afoul of Rule 704(b). In addition, the government cites cases in which we have held that "a qualified narcotics agent typically may testify about the significance of certain conduct or methods of operation unique to the drug business,'" as long as the testimony is relevant. *United States v. Medeles-Cab*, 754 F.3d 316, 321 (5th Cir. 2014) (quoting *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 321 (5th Cir. 2010)).

We need not resolve this issue, however. Even assuming that the district court violated Rule 704(b) by admitting Hilton's and Henderson's testimony—and even assuming that error was "plain" under our precedents—we nonetheless find no effect on Johnson's substantial rights. "We may not correct an error that a defendant failed to raise in the district court unless the error

. . . also affects the defendant's substantial rights." *Gonzalez-Rodriguez*, 621 F.3d at 363. "As a general rule, an error affects a defendant's substantial rights only if the error was prejudicial." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). "Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *Id.* The probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings. *United States v. Holmes*, 406 F.3d 337, 365 (5th Cir. 2005) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004)).

Here, even if the district court had excluded the challenged testimony, the probability of a different result is insufficient to undermine confidence in the outcome of the proceedings. As noted above, the government did not need to show Johnson's subjective intent for possessing the gun; it needed only to establish "knowing possession" and—through the *Ceballos-Torres* factors, on which the jury was instructed—a "nexus linking the defendant and the firearm to the offense." *Smith*, 878 F.3d at 502. Evidence of both was overwhelming. Both the Glock and the drugs were in the same hotel room, under Johnson's control. Since Johnson was a convicted felon, he had no legal right to possess a gun. In the room, Johnson also had enough heroin for 100–200 street-level sells, along with drug dealing paraphernalia and $5,000 cash. Although the gun was under the mattress in the bedroom, it remained unlocked, accessible, and loaded. Moreover, when the police burst into the hotel room, Johnson disclosed the location of the "dope" and the gun in the same breath. Later, in his phone calls from jail, Johnson lamented that he had not removed the gun and deposited it at his grandmother's house. Taken together, this evidence clearly establishes that Johnson knowingly possessed the gun in furtherance of drug trafficking—a far cry from the "unloaded antique[ ] mounted on the

No. 17-11452

wall" or the "locked and unloaded" lawfully-possessed hunting rifle contemplated in *Ceballos-Torres*. 218 F.3d at 415.

Because Johnson's substantial rights were not affected, any error the district court may have made in admitting Hilton's and Henderson's testimony does not constitute reversible error on plain error review.

C.

Lastly, Johnson challenges the prosecutor's statement during closing argument that Detective Fleischer had no reason to lie about Johnson's admitting there was heroin in the fridge and a gun under the mattress.[2] Johnson contends the district court erred in failing to intervene during the argument, depriving him of a fair trial. Because Johnson did not object to the prosecutor's statement, we again review for plain error. *Puckett v. United States*, 556 U.S. 129, 134–35 (2009); *del Carpio Frescas*, 932 F.3d at 332.[3]

Generally, a prosecutor cannot bolster a police officer's credibility by appealing to his authority as a police officer. *See, e.g.*, *United States v. Kiekow*, 872 F.3d 236, 254 (5th Cir. 2017), *cert. denied sub nom. Pierre v. United States*, 138 S. Ct. 1301 (2018) (recognizing that "it is impermissible for a prosecutor to make 'a largely emotional appeal to the jury to credit the arresting officers' testimony because they [are] police officers'") (quoting *United States v.*

---

[2] As an initial matter, the government urges that the prosecutorial misconduct arguments in Johnson's reply brief are so different from those in his opening brief that they are waived. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived"). While the arguments in Johnson's reply brief are revised and expanded, we do not find them to be entirely new. In any event, we exercise our discretion to consider the arguments. *United States v. Davis*, 602 F.3d 643, 648 n.7 (5th Cir. 2010).

[3] Johnson argues that the rigor of plain error review should be loosened here because objecting would only have drawn attention to the allegedly improper statements. This argument is without merit. Our cases addressing improper prosecutor statements in closing arguments have consistently applied one-hundred-proof plain error review, not a diluted version. *See, e.g.*, *United States v. Aguilar*, 645 F.3d 319, 323 (5th Cir. 2011); *United States v. Gracia*, 522 F.3d 597, 603 (5th Cir. 2008).

*McCann*, 613 F.3d 486, 496 (5th Cir. 2010)); *United States v. Gallardo-Trapero*, 185 F.3d 307, 319–20 (5th Cir. 1999) (disapproving a prosecutor's repeated rhetorical questions to the jury asking whether "agents for the federal government . . . would get on the witness stand and commit perjury and risk their career"). On the other hand, a prosecutor may speak to a law enforcement witness's credibility at closing if the statement is supported by prior evidence. *See United States v. Bermea*, 30 F.3d 1539, 1564–65 (5th Cir. 1994) (finding no error where a prosecutor merely restated prior testimony that government informants are fired if found to have lied to law enforcement). And even if statements of that nature extend past the evidence, we have sometimes allowed them where they amount merely to proportionate, common-sense observations about a witness's lack of motive to lie. *See United States v. Robles-Pantoja*, 887 F.2d 1250, 1255–56 (5th Cir. 1989) (holding proper prosecutor's statements about career implications for testifying agents because based on "the kind of common sense and knowledge of the natural tendencies and inclinations of human beings that juries are properly allowed to consider"); *United States v. Cotton*, 631 F.2d 63, 65–66 (5th Cir. 1980) (treating as proper a prosecutor's closing that defended testifying secret service agents by stating "they were men who protected the President" and would not "risk their careers" by lying for the sake of one conviction); *United States v. Hayes*, 118 F. App'x 856, 858 (5th Cir. 2004) (recognizing that "[a] prosecutor may 'present what amounts to be a bolstering argument if it is specifically in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [the prosecutor] or his witness.'") (quoting *United States v. Thomas*, 12 F.3d 1350, 1367 (5th Cir. 1994)).

Admittedly, the prosecutor's suggestion that Detective Fleischer had no motive to lie was not simply a restatement of any prior evidence. At the same time, however, the prosecutor made the statement to rehabilitate Fleischer

14

after defense counsel suggested repeatedly that Fleischer fabricated his account of Johnson's confession on the eve of trial. Ultimately, however, we need not decide whether it was actual error for the district court to allow the prosecutor's statement, because any error was not "clear and obvious." *See, e.g.*, *United States v. De Jesus-Ojeda*, 515 F.3d 434, 445 (5th Cir. 2008) (plain error review requires "clear and obvious" error). Where parties can "reasonably dispute" whether an error even occurred, the error is neither clear nor obvious. *United States v. Segura*, 747 F.3d 323, 330 (5th Cir. 2014). Although the general rule barring emotional appeals to a witness's authority as a police officer is clear, the challenged statement here falls on the spectrum between such bolstering and a permissible common-sense rebuttal of attacks on an officer's credibility. Because parties could reasonably dispute whether the statement constituted impermissible bolstering, we cannot say that the error—if any—was clear and obvious. Therefore, Johnson has not satisfied the second prong of the plain error standard. We stop there, without proceeding to the third or fourth prongs.

In sum, the district court did not plainly err by allowing the prosecutor to suggest that Detective Fleischer had no reason to lie.

AFFIRMED