# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47388

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

JESSICA LEE COLPITTS,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: March 29, 2022

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. Gregory FitzMaurice, District Judge.

Judgment of conviction for first degree murder, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley and Andrea W. Reynolds, Deputy Appellate Public Defenders, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

BRAILSFORD, Judge

Jessica Lee Colpitts appeals from her judgment of conviction for first degree murder, Idaho Code §§ 18-4001, 18-4002, 18-4003(a). Colpitts argues the district court erred in admitting audio recordings of telephone calls and call logs and in declining to instruct the jury that a witness was an accomplice as a matter of law. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Colpitts with first degree murder for the murder of Samantha Fignani, and the case proceeded to a twelve-day jury trial. The evidence the State presented at trial shows that, at approximately 7:20 p.m. on May 22, 2017, Fignani was fatally shot in the abdomen at her residence. A source told law enforcement that Colpitts had shot Fignani and that Cassie Madsen

1

had driven Colpitts to Fignani's residence and then drove Colpitts away after the shooting. The source also said Colpitts was angry with Fignani because Fignani was in a relationship with Joseph Walker, who was Colpitts' boyfriend and the father of one of her children.

Approximately one month before Fignani's murder, Colpitts kicked Walker out of her residence. Afterwards, Walker resided with Fignani until he was arrested for a probation violation. Walker concealed the nature of his relationship with Fignani from Colpitts until the day of the murder. On that day, at approximately 5:54 p.m., Walker called Colpitts from jail and admitted his romantic relationship with Fignani. In response, Colpitts was audibly upset.

This telephone call, and others which Walker made to Colpitts from jail between May 20 and 23, were recorded. During this timeframe, Walker was incarcerated first in the Nez Perce County Jail and then in the Bonner County Jail. Nez Perce County contracts with Securus, a third-party company which provides inmate communication services. Similarly, Bonner County contracts with Telmate for inmate communication services. As part of their services, both Telmate and Securus provide audio recordings of inmate calls. During trial, the State introduced call logs of Walker's calls from jail and the audio recordings of six of Walker's calls to Colpitts from jail.

In addition to numerous other witnesses, the State presented the testimony of Madsen. Madsen testified that Colpitts asked Madsen to "drive [Colpitts] to [Fignani's] residence" and that Madsen "figured there could be a fight." Madsen admitted she saw the gun at Colpitts' residence before the two left for Fignani's residence. Madsen, however, claimed she did not know Colpitts brought the gun to Fignani's residence and did not see the gun until Colpitts pulled it from her sweatpants to shoot Fignani.

Based on Madsen's involvement, Colpitts requested that the district court instruct the jury that Madsen was an accomplice as a matter of law. The court, however, declined to instruct the jury that Madsen was an accomplice as a matter of law, ruling that "a reasonable view of the evidence" prevented the court from making such a finding. Instead, the court instructed the jury to determine whether Madsen was an accomplice.

The jury convicted Colpitts of first degree murder, and she timely appeals.

ANALYSIS

## A. Admissibility of Audio Recordings and Call Logs

### 1. Standard of review

On appeal, Colpitts challenges the district court's rulings admitting audio recordings of Walker's telephone calls to her from jail and call logs identifying his calls from jail. The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

### 2. Evidence related to audio recordings and call logs

Regarding the audio recordings of Walker's telephone calls to Colpitts from the Nez Perce County Jail, the State presented testimony of Schubert, a retired Nez Perce County sheriff's deputy. Schubert testified his job included "working with the computer systems" and "download[ing]" inmates' recorded calls when requested. Schubert described the Securus telephone system at the Nez Perce County Jail and explained inmates are allowed to make calls from "kiosks" in their "pod," meaning the area in which they are housed, and that "each inmate has an ID" used to "log into the system to make a phone call."

Schubert further explained that Securus is a "common system used at jails," "provide[s] all the equipment," and records, stores, and maintains the inmate's calls; Schubert could "retrieve" and "download" "the phone calls that an individual [inmate] made in a specific time period [or] the calls made to a specific phone number between two dates"; and Securus would provide these downloaded calls in a "proprietary," "encoded" format, which could not be modified and which included the time and date of the calls and "the phone numbers attached" to them. Schubert

testified that the Orofino Police Department requested recordings of Walker's calls from the Nez Perce County Jail on May 20 and 21, 2017; Schubert "downloaded those calls to a CD" and made them available to the police department; and he neither modified nor listened to the recordings.

Regarding the audio recordings of Walker's telephone calls to Colpitts from the Bonner County Jail, the State presented the testimony of Lieutenant Stevens, a Bonner County Sheriff's employee. Lieutenant Stevens testified he is "the main person" responsible for Telmate, the company that records inmate calls made from the Bonner County Jail. Lieutenant Stevens described Telmate, explaining that when an inmate makes a call, he must enter "a unique pin number" and provide "voice recognition," which the inmate creates the first time he accesses the phone system. Lieutenant Stevens further explained that Telmate records the calls "digitally"; those calls are stored somewhere other than Bonner County; and he does not know any way in which the recordings can be modified.

Lieutenant Stevens also explained the process for copying the recorded telephone calls, including logging into Telmate; choosing "a call history"; "search[ing] by the inmate's name"; "set[ting] a date range"; choosing the requested calls; and transferring the audio file of the calls "onto a CD, a thumb drive, or attached to an email." Lieutenant Stevens indicated Telmate creates a "separate file" showing "the name, the location, the date and time" of each call. He testified that Detective Frazier of the Orofino Police Department requested recordings of Walker's calls and that Lieutenant Stevens emailed Detective Frazier recordings of those calls, did not and could not modify the recordings, and "set [Detective Frazier] up as an investigator on the Telmate system and sent him information on how to log in."

Lieutenant Stevens also identified Exhibit 107, "a listing of phone calls made with respect to [Walker]" from the Bonner County Jail. This call log identifies the calls by Walker's name and pin number and states each call's time, date, and duration and the "destination" or receiving telephone number. When the State moved to admit Exhibit 107, Colpitts objected, arguing Exhibit 107 lacked foundation because Lieutenant Stevens "just rel[ied] on the Telmate system to provide that information," and he is "not an employee or executive or officer of the Telmate system." The district court admitted Exhibit 107 over Colpitts' objection.

The State introduced the audio recordings of Walker's telephone calls to Colpitts from Nez Perce and Bonner Counties through the testimony of Detective Frazier, who investigated the murder. At the beginning of Detective Frazier's testimony, Colpitts asked to take up a matter

4

outside the jury's presence, and the district court excused the jury. Colpitts then objected to any attempt by Detective Frazier to introduce the audio recordings as lacking foundation. Specifically, Colpitts asserted that Detective Frazier "is not able to lay a foundation by himself as to who the participants were in the conversation" and that the "third party" which recorded the calls had not "testified to the reliability or the methods of the recording of the communications" or "about the protocol involved."[1]

In response, the State presented Detective Frazier's testimony as an offer of proof to the district court. Detective Frazier testified that he listened to the recordings from both Nez Perce and Bonner Counties, recognized Colpitts' and Walker's voices on those recordings, and did not alter any of the recordings but only copied them. On cross-examination, Detective Frazier testified that he did not know "what [Telmate's] protocols are for recording these conversations," whether Telmate "modified or changed anything in the recordings," and "whether [Securus] modified or changed either the outgoing message or the recording of the conversation itself." In response to the court's inquiries during the offer of proof, Detective Frazier testified that he recognized Walker's "voice pattern"; Walker "says his name" on the calls; and "the content and material discussed" during the calls "lead [Detective Frazier] to believe who was involved in the calls."

After this offer of proof, the district court overruled Colpitts' objections to the audio recordings, and the State introduced six recordings of Walker's telephone calls to Colpitts. Additionally, the State introduced Exhibit 131, a call log of Walker's calls from Nez Perce County identifying the date and time of those calls and the call participants as Colpitts and Walker. When the State moved to admit this call log, the district court noted that Colpitts had a "continuing objection to 131" before realizing the exhibit was a call log, not an audio recording. Upon realizing the exhibit was not an audio recording, the court stated, "It's a log. So at this point in time you can make any objection you might want on 131. I thought it was a recording." When the State moved to admit Exhibit 131, Colpitts responded, "No additional objection," and the court admitted Exhibit 131.

---

[1] Colpitts also objected that the State failed to provide a foundation that it was submitting the recordings "in compliance with either the Federal Communication Security Act or the Idaho Communications Security Act." Colpitts does not rely on this objection on appeal.

### 3. Admissibility of audio recordings

Colpitts argues the district court abused its discretion by admitting the audio recordings of Walker's telephone calls to Colpitts. She contends that the State "did not sufficiently authenticate" the audio recordings because it did not establish the operators' "competency," the recording systems' "fidelity," and "the absence of material alterations in the recordings" and that the State "did not sufficiently identify the voices of the participants." Idaho Rule of Evidence 901(a) provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides an illustrative, nonexhaustive list of examples of evidence that satisfy authentication. *State v. Koch*, 157 Idaho 89, 96, 334 P.3d 280, 287 (2014). Regarding voice recognition, Rule 901(b)(5) provides that "an opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker" satisfies the authentication requirement. Rule 901(b) also states that the testimony of a person with knowledge or an item's contents or other distinctive characteristics may satisfy authentication. I.R.E. 901(b)(1), (4).

We reject Colpitts' assertion that the State failed to identify sufficiently the voices on the audio recordings of the telephone calls. Detective Frazier repeatedly testified he recognized the voices as Colpitts' and Walker's. Contrary to Colpitts' assertion that Detective Frazier "did not say how he was familiar with the two voices," Detective Frazier testified that, while investigating the murder, he interviewed Colpitts and recorded the conversation and that he was "familiar with the voice pattern and the voice of [Walker]," who told Detective Frazier that Walker made calls to Colpitts. This testimony sufficiently authenticated the audio recordings as recordings of Walker's calls to Colpitts. *See* I.R.E. 901(b)(5) (providing authentication if opinion identifying voice is based on previously hearing voice); *State v. Bradley*, 158 Idaho 66, 68, 343 P.3d 508, 510 (Ct. App. 2015) (ruling sergeant authenticated recording by recognizing voices of informant and defendant "after talking with him during a traffic stop").

Furthermore, other evidence indicates the audio recordings were recordings of the telephone calls between Walker and Colpitts. This evidence includes Colpitts' telephone records showing incoming calls corresponding with the dates and times Walker placed phone calls to Colpitts from jail, Walker's testimony about calling Colpitts on May 22 and telling her about his

6

relationship with Fignani, and the contents of the recordings. For example, in the recordings, Walker often inquires about "baby"; says the name of his child with Colpitts; refers to the other person on the call as "Jess," "Jessica," or "my baby's momma"; and discusses his relationship with "Sam." *See* I.R.E. 901(b)(4) (providing "contents" and "substance" of items "taken together with all the circumstances" may authenticate evidence).

We also reject Colpitts' assertion that the State "did not sufficiently authenticate" the audio recordings because it did not establish "the absence of material alterations in the recordings." In support, Colpitts relies on this Court's decision in *Bradley*, 158 Idaho 66, 343 P.3d 508. In *Bradley*, the district court admitted audio recordings of Bradley, who argued on appeal that the State had an obligation but failed to show "no changes, additions, or deletions were made to the recordings." *Id.* at 69, 343 P.3d at 511. This Court agreed that "a proper foundation for an audio recording ought to include evidence that it has not been modified." *Id.* This Court ruled, however, that the testimony of "[t]he sergeant who made the recordings indicated they were an accurate representation" and that this testimony was sufficient to show the recordings were not modified. *Id.* at 70, 343 P.3d at 512. The Court noted that "Bradley has pointed to nothing in the recordings, or any other evidence at trial," indicating the recordings had been modified; "failed to raise a colorable assertion of any defect" in the recordings; and "merely speculates that the recordings could have been modified by some unknown party." *Id.*

As in *Bradley*, Colpitts has failed to identify any basis to indicate the audio recordings of Walker's telephone calls to Colpitts had been modified or were otherwise defective. Schubert testified that Securus provided the recordings in "proprietary," "encoded" format, which he did not modify and which "were not modifiable in any manner." Similarly, Lieutenant Stevens testified he did not modify the Telmate recordings and he did not "know of any way [they could] be modified," and Detective Frazier testified he did not modify any of the recordings. This testimony was sufficient to establish the recordings had not been modified absent other evidence of any defect in the recordings.

Finally, we reject Colpitts' assertion that the State did not establish the operators' "competency" or the recording systems' "fidelity." In support, Colpitts relies on *United States v. Johnson*, 943 F.3d 214 (5th Cir. 2019). In that case, Johnson appealed his conviction to the Fifth Circuit Court of Appeals, challenging the district court's admission of audio recordings of his telephone calls from jail, which Securus recorded. *Id.* at 218. In order to authenticate the

recordings, the government presented a Securus technician's testimony. *Id.* Johnson challenged the recordings' authentication, however, because "the government had not shown the equipment was in 'good working order and capable of producing an accurate recording' at the precise time the recordings were made." *Id.*

Citing other Fifth Circuit authority, the *Johnson* court noted that "generally, to establish authenticity of intercepted telephone calls, the Government must demonstrate: 1) the operator's competency, 2) the fidelity of the recording equipment, 3) the absence of material alterations, and 4) the identification of relevant sounds or voices."[2] *Id.* at 220 (brackets and internal quotation marks omitted). The court also noted, however, that "this is not a rigid formula." *Id.* In particular, the court noted that "because the Securus recording system is an automated process, operator competency is not particularly salient" and that even if the government had not satisfied each factor, the calls would still be admissible if upon independent examination, the district court was convinced that the recordings accurately reproduce the auditory experience. *Id.* at 220-21. Accordingly, the court concluded the district court did not abuse its discretion by admitting the recordings. *Id.* at 221.

On appeal, Colpitts argues that the State failed to establish "[t]he factors emphasized" in *Johnson* to authenticate the recordings. We disagree, however, that the State was required to comply with *Johnson*. As discussed above, the State authenticated the voices on the recordings as Walker's and Colpitts' voices through the testimony of Detective Frazier, who was personally familiar with both of their voices. Further, the State authenticated the recordings as accurate

---

[2]     The State argues on appeal that Colpitts did not preserve her "four-point appellate challenge" under *United States v. Johnson*, 943 F.3d 214 (5th Cir. 2019), but rather, she "only preserved an objection to the 'circumstances under which the recordings occurred' and the identity of the participants." In support, the State relies on *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019), in which the Idaho Supreme Court held that an appellate court "will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address." Colpitts counters the legal issue and her position on the issue have not changed, but instead, her specific legal argument has merely evolved on appeal. *See id.* at 98, 439 P.3d at 1270 (noting specific legal arguments used to support position on issue may evolve). Colpitts argued before the district court that the State failed to present testimony about "the reliability or the methods of the recording of the communications." Accordingly, we construe Colpitts' argument to have permissibly "evolved" on appeal and address her reliance on *Johnson*, despite that the district court did not have an opportunity to address the specific factors she raises on appeal. We note, however, that a court does not err by failing to follow or address nonbinding authority, especially when a party does not cite that authority to the court.

through the testimony of Schubert, Lieutenant Stevens, and Detective Frazier, all of whom denied modifying the recordings. As the *Johnson* court noted, "operator competency" is not particularly salient because both the Telmate and Securus systems are automated. Finally, although the State did not present evidence of the systems' "fidelity," no evidence suggested the systems' lack of trustworthiness. Based on the evidence presented--including the testimony about how the telephone systems work, the identity of the voices on the audio recordings, and the contents of the recordings--we hold that the district court did not abuse its discretion in admitting the recordings.

### 4. Admissibility of call logs

On appeal, Colpitts also purports to challenge the admission into evidence of the call logs of Walker's calls from jail by noting in her opening brief in a footnote that she preserved her objections to both of the call logs and that "the designation 'the audio recordings' [as] used in [the] brief" refers to both the recordings and the call logs. Colpitts' objections to the recordings, however, do not necessarily relate to the call logs and to the extent they do, our rejection of her challenges to the admissibility of the recordings is likewise a rejection of those challenges as they may relate to the call logs' admissibility. Other than her challenges to the recordings, Colpitts does not provide any argument or authority on appeal that the State failed to authenticate the call logs. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (stating that a party waives an issue on appeal if either argument or authority is lacking).

### B. Accomplice Jury Instruction

Colpitts argues the district court erred in refusing to instruct the jury that Madsen was an accomplice as a matter of law. Whether the trial court properly instructed the jury is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. *State v. Jeske*, 164 Idaho 862, 872, 436 P.3d 683, 693 (2019); *Severson*, 147 Idaho at 710, 215 P.3d at 410. A requested jury instruction must be given if "correct and pertinent." I.C. § 19-2132; *Jeske*, 164 Idaho at 872, 436 P.3d at 693. An instruction is not correct and pertinent if it is (1) an erroneous statement of the law; (2) adequately covered by other

instructions; or (3) not supported by the facts of the case. *Severson*, 147 Idaho at 710-11, 215 P.3d at 430-31.

Under Idaho law, an accomplice's testimony cannot support the defendant's conviction unless other evidence tending to connect the defendant to the crime corroborates the accomplice's testimony:

> A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

I.C. § 19-2117.

For purposes of I.C. § 19-2117, ICJI 313 defines an accomplice:

> An accomplice is a person who intends to promote or assist in the commission of a crime and who either directly commits the acts constituting the crime or who, before or during its commission, aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit the crime. Mere presence at, acquiescence in, or silent consent to, the planning or commission of a crime is not [in the absence of a duty to act] sufficient to make one an accomplice.

*See also State v. Scroggins*, 110 Idaho 380, 386, 716 P.2d 1152, 1158 (1985) ("Some aiding, abetting or actual encouragement on the part of the person charged is essential to make that person an accomplice."); *State v. Reid*, 151 Idaho 80, 86, 253 P.3d 754, 760 (Ct. App. 2011) (finding aiding and abetting first degree murder requires proof accomplice shared principal's criminal intent).

Under I.C. § 19-2117, if the evidence raises a genuine issue whether a witness is an accomplice, the district court "must submit that issue to the jury for resolution." *State v. Emmons*, 94 Idaho 605, 608, 495 P.2d 11, 14 (1972); *see also State v. Brooks*, 103 Idaho 892, 904, 655 P.2d 99, 112 (Ct. App. 1982) ("Where there are facts in dispute or in conflict which raise a genuine issue as to whether a witness is indeed an accomplice, the court must submit that issue to the jury for resolution."). If, however, the evidence is "without substantial conflict" that the witness is an accomplice, "the court must decide the question as a matter of law." *Emmons*, 94 Idaho at 608, 495 P.2d at 14; *see also State v. Sensenig*, 95 Idaho 218, 220, 506 P.2d 115, 117 (1973) (same). In either event, the court must instruct the jury on corroborating evidence. *See* ICJI 313 (proposing instruction on corroborating evidence).

On appeal, Colpitts argues Madsen was an accomplice as a matter of law "under any reasonable view of the evidence." In support, Colpitts states Madsen "testified she believed [Colpitts] was going to commit battery," "acknowledged [Madsen's] role in aiding in the commission of the offense," and "functioned as the 'getaway driver' after [Colpitts] shot [Fignani]." Also in support, Colpitts relies on *Emmons*, 94 Idaho 605, 495 P.2d 11.

In *Emmons*, the State charged Emmons with grand larceny for taking a typewriter from a station wagon. *Id.* at 607, 495 P.2d at 13. At trial, the State's main witness, Randy, testified that Emmons took the typewriter from the station wagon; Randy and another person took a briefcase and copier machine from the station wagon; and the "three unloaded the goods and put them in the house." *Id.* At the close of evidence, Emmons moved for a directed verdict based on I.C. § 19-2117, arguing that Randy was an accomplice and that no evidence corroborated Randy's testimony. *Emmons*, 94 Idaho at 607, 495 P.2d at 13. The district court, however, denied the motion and instructed the jury to determine whether Randy was an accomplice. *Id.* at 607-08, 495 P.2d at 13-14. The jury convicted Emmons, who appealed.

The Idaho Supreme Court addressed "whether the district court erred in not finding that the state's main witness was an accomplice" as a matter of law under I.C. § 19-2117. *Emmons*, 94 Idaho at 606, 495 P.2d at 12. The Court reversed the judgment of conviction. *Id.* at 609, 495 P.2d at 15. The Court concluded that it was "inescapable that Randy assisted in looting the station wagon and willfully participated in hiding the stolen goods" and that "the only logical and reasonable conclusion" was Randy was an accomplice, despite that he took the briefcase but Emmons was only charged with taking the typewriter. *Id.* at 608, 495 P.2d at 14.

This case is distinguishable from *Emmons*. Unlike *Emmons*, the evidence in this case is not without substantial conflict that Madsen is an accomplice to murder. Rather, the evidence creates a genuine issue of material fact whether Madsen was merely present at or acquiesced in the murder or whether she actually aided, encouraged, or helped commit the crime. *See* ICJI 313 (defining accomplice). For example, Madsen testified that she did not know Colpitts had a gun until Madsen saw Colpitts pull the gun from her sweatpants to shoot Fignani; Madsen did not know Colpitts intended to shoot Fignani; and Madsen did not intend to harm or have a physical altercation with Fignani.

Colpitts also relies on Madsen's testimony that she "figured that there could be a fight" between Colpitts and Fignani to assert Madsen believed Colpitts was going to commit a battery,

11

which Colpitts argues makes Madsen an accomplice to murder as a matter of law. We reject this argument. The appellate courts have previously rejected that a witness is an accomplice as a matter of law where the witness claimed only to be involved as a bystander; did not actively participate in the charged crime; was convicted of a separate, distinct crime; or did not share the defendant's criminal intent. *Sensenig*, 95 Idaho at 220-21, 506 P.2d at 117-18 (concluding witness not accomplice as matter of law because there was no evidence of "active participation attributed to the witness," although "it could be inferred witness knew what was going on"); *State v. Murphy*, 94 Idaho 849, 851, 499 P.2d 548, 550 (1972) (concluding witness not accomplice as matter of law where defendant and witness committed separate, distinct crimes); *Reid*, 151 Idaho at 86, 253 P.3d at 760 (discussing requirement that aider and abettor share principal's criminal intent); *Brooks*, 103 Idaho at 905, 655 P.2d at 112 (concluding witness not accomplice as matter of law where he "claimed his only involvement was that of a bystander who received a share of the stolen money in return for a promise not to ever talk about the incident").

Moreover, an instruction that Madsen was Colpitts' accomplice as a matter of law was inconsistent with Colpitts' defense theory. Colpitts' defense was that Madsen, acting alone, murdered Fignani. In support of this defense, Colpitts argued in closing that Madsen was alone in her vehicle just before the murder, had a motive to murder Fignani, behaved suspiciously after the murder, and made incriminating statements about the murder and about having "gotten away with murder before." Contrary to Colpitts' defense, a jury instruction that Madsen was an accomplice as a matter of law would have indicated she did not act alone but rather assisted Colpitts in committing the murder, thereby implicating Colpitts. *See State v. Lucio*, 99 Idaho 765, 766, 589 P.2d 100, 101 (1979) (concluding witness was not accomplice as matter of law where defendant denied being involved in charged crime, which "raised a direct conflict in the evidence [whether the witness] was an accomplice").

We acknowledge ICJI 313--the approved jury instruction requiring other evidence to corroborate an accomplice's testimony--provides a definition of accomplice that includes language indicating an accomplice may be a person who "directly commits the acts constituting the crime." ICJI 313, however, provides that the court should instruct the jury regarding this definition of accomplice *only if* it instructs the jury to determine the factual question of whether a witness is an accomplice. ICJI 313 does not provide that the court should instruct the jury on the definition of accomplice if the witness is an accomplice as a matter of law. *See* ICJI 313 (proposing jury either

12

be instructed under "Alternative 1" as matter of law that witness is accomplice or under "Alternative 2" to determine a factual question of whether witness is accomplice and providing definition of accomplice). Accordingly, absent some modification to the language of ICJI 313, which Colpitts did not request, she cannot simultaneously assert that Madsen was the sole actor who murdered Fignani and argue Madsen also acted as Colpitts' accomplice in the murder without implicating herself.

Colpitts denied committing murder, and Madsen testified she did not know Colpitts intended to commit murder. This and other evidence created a question of fact whether Madsen was an accomplice to murder. As a result, the district court did not err by refusing to instruct the jury that Madsen was an accomplice as a matter of law.

## IV.

## CONCLUSION

The district court did not err by admitting the audio recordings or call logs into evidence or by refusing to instruct the jury that Madsen was an accomplice as a matter of law. Accordingly, we affirm Colpitts' judgment of conviction for first degree murder.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

13